# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

**WILLIAM PAUL LUTTRELL, JR.**

    *Plaintiff,*

v.

**FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY,**

    *Defendant.*

Case No. 2:25-cv-02140-BCL-cgc

---

## ORDER AFFIRMING DECISION OF THE COMMISSIONER

---

Plaintiff William Paul Luttrell, Jr. seeks judicial review of a decision of the Commissioner of Social Security Administration's ("SSA") denying his Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] For the reasons stated below, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

On July 18, 2023, Plaintiff applied for DIB under Title II of the Act. In support of his claims, Plaintiff alleged disability beginning on June 30, 2023, due to "PTSD with adjustment disorder, anxiety, depressed moods, traumatic brain injury, vertigo radiculitis, radiculopathy, impingement syndrome, bursitis, lower extremity radiculopathy, lumbar generative arthritis, and spinal stenosis." Doc. 18 at 1. Plaintiff claims that he was born in 1993. Doc. 20 at 2. He served in the Army from 2014 to 2020 and has a "100 percent service-connected disability rating." Doc.

---

[1] When it was filed in February 2025, this matter was initially assigned to Judge Mark Norris. Docs. 1-2. Judge Norris transferred the case to the undersigned in March 2026. Doc. 22.

1

18 at 2-3. Plaintiff's claim was initially denied on September 27, 2023, and denied again on reconsideration on May 10, 2024. *Id.* at 1. On October 10, 2024, Plaintiff appeared and testified before an Administrative Law Judge ("ALJ"). *Id.*

On October 23, 2024, the ALJ issued a decision finding Plaintiff not disabled. *Id.* The question, as framed by the ALJ and accepted by the parties, was whether Plaintiff had an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." Doc. 10 at 16; *see* 20 C.F.R. § 404.1505(a). More specifically, the question at this point is whether the ALJ erred in determining Plaintiff's so-called Residual Functional Capacity: a determination, based on all the evidence, of the "most" the claimant "can still do despite [his] limitations," which is then used at Steps 4 and 5 of the sequential evaluation process to determine whether the claimant can perform, respectively, the claimant's past relevant work or work that exists in the national economy. 20 C.F.R. § 404.1545(a). Here, the ALJ found that there exist jobs that Plaintiff could perform, based on the ALJ's determination that Plaintiff has the residual functional capacity to perform light work, given:

> he can occasionally lift 20 pounds, and can frequently lift 10 pounds; he can stand and walk for six hours, and can sit for six hours of an eight hour workday; he can frequently climb ramps and stairs, and can occasionally climb ladders, ropes, and scaffolds; he can frequently balance, stoop, kneel, crouch, and crawl; he can frequently reach overhead bilaterally; he can understand, remember, and carry out simple instructions; he can maintain concentration, persistence, and pace to complete those tasks with customary breaks; he can interact occasionally with others, and tolerate occasional changes in workplace routine.

Doc. 10 at 22, 31.

Even more granularly, the sole question presented by Plaintiff here is whether the ALJ properly evaluated the opinion of consultative examiner Willyn Jenkins, M.D. Doc 18 at 1; Doc.

20 at 1. Dr. Jenkins "opined that the claimant can occasionally lift and carry less than 10 pounds; stand and walk for less than two hours; has no impairment in his ability to sit; and he has difficulty with fine manipulative tasks with his hands." Doc. 10 at 28. The ALJ rejected that opinion as "inconsistent with the record and the examination findings." Doc. 10 at 44. As noted, that is the sole aspect of the ALJ's opinion that Plaintiff challenges here, and Defendant does not suggest that any error in the ALJ's evaluation of Dr. Jenkins' opinion is harmless. This case thus squarely turns on whether the ALJ's rejection of Dr. Jenkins' opinion survives review.

## LEGAL STANDARD

In Social Security cases, the District Court "review[s] whether the ALJ 'applied the correct legal standards and whether the[ir] findings … are supported by substantial evidence.'" *Norris v. Comm'r of Soc. Sec.*, 139 F.4th 541, 545 (6th Cir. 2025). "A finding is supported by substantial evidence if there is more than a mere scintilla of evidence that a reasonable mind might accept as adequate to support [the] conclusion." *Id.* (internal quotations omitted). "The substantial-evidence standard … presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). "If substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* In undertaking the analysis, the Court does not "resolve conflicting testimony or evaluate credibility." *Norris*, 139 F.4th at 545.

## ANALYSIS

As noted, the issue in this case concerns the determination of Plaintiff's residual functional capacity, as relevant to the fourth and fifth steps of the evaluation process. Specifically, the issue presented here is whether the ALJ improperly evaluated—and largely rejected—the opinion of

consultative examiner Dr. Jenkins.  In evaluating such opinion evidence, the ALJ must explain

how the "supportability" and "consistency" factors were considered:

- Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical filing(s), the more persuasive the medical opinions or prior administrative medicals filing(s) will be."

- Consistency means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."

20 C.F.R. § 404.1520c.

Plaintiff leads with an argument that the ALJ's "analysis of the supportability factor is

inadequate" because the ALJ attributed an inconsistency to Dr. Jenkins' opinion that does not

exist—i.e., that Dr. Jenkins' acknowledgement of Plaintiff's grip strength and grasping ability

undercut his opinion that Plaintiff would have "difficulty with fine manipulation." Doc. 18 at 9

(emphasis omitted). This argument fails for at least two reasons. *First*, while the ALJ mentions

Plaintiff's grip strength and grasping ability, he never said that he was relying on those factors to

reject Dr. Jenkins' opinion concerning Plaintiff's abilities with fine manipulation. *Second*, the ALJ

pointed to other evidence independently supporting his rejection of Plaintiff's claimed deficiencies

in fine manipulation—i.e., Plaintiff's ability to "perform activities of daily living which we know

to include keyboarding for several hours a day," and the fact that studies "provide[d] no basis for"

Dr. Jenkins' opinion concerning Plaintiff's report of "decreased sensation to pinprick or light

touch." Doc. 10 at 27-28.

Plaintiff also challenges the ALJ's analysis of the consistency factor. Here, Plaintiff largely

argues that the ALJ could have done more to explain his conclusion that the other evidence

contradicted Dr. Jenkins' opinion, but the governing standards do not require the ALJ to write a

treatise. As one example, it requires no elaboration to understand the ALJ's reasoning that

4

keyboarding for several hours a day undercuts a claim of substantially decreased fine manipulation in the fingers. Doc. 18 at 10-11. And while Plaintiff faults the ALJ for noting that treatment records do not reflect the reduced range of motion asserted in the consultative report, even Plaintiff concedes that the statement is accurate even as he would accord it less weight on the ground that tests are not reflected in the treatment records at all. Doc. 18 at 11. That sort of difference of opinion is not a basis for reversal under the deferential standard that governs here. *Blakely*, 581 F.3d at 406 *See Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at \*3 (6th Cir. Sept. 28, 2023) (upholding the ALJ's supportability conclusion when, despite the presence of spinal impairments, none of the opining doctor's contemporaneous treatment notes indicated the claimant had significant sitting and standing limitations). And the same goes for Plaintiff's similar argument concerning the ALJ's reliance on a lack of testing supporting Plaintiff's claim of decreased sensation. Doc. 18 at 12. And that leaves only Plaintiff's argument that the ALJ incorrectly concluded that Dr. Jenkins based his diagnosis of "pain" on Plaintiff's subjective self-report and not objective evidence. Doc. 18 at 12-13.  But Dr. Jenkins' report does indicate that he relied on Plaintiff's "reports" of pain (Doc. 10-2 at 699-700, 702) and, in any event, the ALJ's discussion of pain came only after the ALJ had provided other, independently sufficient reasons for rejecting Dr. Jenkins' opinion, which means that Plaintiff's argument about the ALJ's discussion of pain would not support reversal even if credited.

### CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.  The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED**, this 8th day of June, 2026.

s/ *Brian Lea*_____
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

5